IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division



JAVAID IQBAL,

      Petitioner,

v.                                          Civil Action No. 2:08cv104

TONY R. BRYSON, *et al.*,

      Respondents.

## *AMENDED MEMORANDUM OPINION AND ORDER*

Pending before the Court is Javaid Iqbal's ("Petitioner") Motion for Summary Judgment and Tony R. Bryson and Emilio T. Gonzalez's ("Respondents") Joint Cross-Motion for Summary Judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Having carefully reviewed the parties' pleadings, the Court finds this matter ripe for judicial determination. For the reasons below Petitioner's Motion for Summary Judgment is GRANTED and Respondents' Motion for Summary Judgment is DENIED.

## I. FACTUAL AND PROCEDURAL HISTORY

Petitioner filed the present action pursuant to 8 U.S.C. § 1421(c), seeking *de novo* review of the U. S. Department of Homeland Security, Citizenship and Immigration Services' ("CIS") denial of his naturalization application. Petitioner is a citizen of Pakistan who currently resides in Virginia Beach, Virginia. Petitioner first entered the United States in 1985 and has been a lawful permanent resident of the United States since March 13, 1992. On January 9, 1996, Petitioner was arrested and charged in the District Court for the Northern District of New York

1

with attempting to bring aliens in reckless disregard of the fact that these aliens had not received prior official authorization to enter the United States, in violation of 8 U.S.C. § 1324(a)(2)(A). (Resp't Mem. Supp. Joint Cross Mot. Summ. J. at 2.) Petitioner was temporarily placed in custody until he was released on $10,000 bond. (*Id.*) On October 10, 1996, Petitioner signed a Pretrial Diversion Agreement ("PDA"), which established that the government would defer prosecution for a period of six months in exchange for Petitioner "accepting responsibility for [his] behavior" and "successfully completing [his] diversion program." (*Id.*) In July 1997, pursuant to the PDA, the criminal charges against Petitioner were dismissed in New York. In addition to the conduct that was the subject of the Northern District of New York proceedings (the "1996 incident"), Petitioner has had two encounters with Virginia Beach, Virginia law enforcement. In 1993, Petitioner was charged with assault and battery; those charges were later dismissed. (Pet. Review Naturalization Appl. ¶ 9.) In 1998, Petitioner was charged with reckless driving; this charged was disposed of as *nolle prosequi*. (*Id.*)

In November 2004, Petitioner submitted his application for naturalization to become a United States citizen. In January 2006, Petitioner was notified that a decision could not be rendered because his Federal Bureau of Investigation ("FBI") background and name checks were still pending. On December 20, 2006, Petitioner filed a petition before this Court requesting adjudication of his application by this Court or a court order requiring CIS to timely adjudicate the pending naturalization application. On April 12, 2007, while the case was pending before the Court, CIS denied Petitioner's naturalization application and subsequently moved to dismiss the case.

On September 5, 2007, this Court denied CIS's motion, remanded the matter to CIS, and instructed it to act on Petitioner's application within sixty days. In accordance with the Court's

order, CIS reviewed and subsequently denied Petitioner's application for naturalization on October 25, 2007. Petitioner requested a hearing and an opportunity for the CIS to reconsider their reasons for denial. On December 4, 2007, Petitioner appeared for an interview and, on February 11, 2008, CIS issued a final decision denying Petitioner's naturalization application based on "lack of good moral character." On February 28, 2008, Petitioner filed the current petition for *de novo* review of the CIS decision denying his naturalization application. This Court has jurisdiction to review the CIS decision.

Petitioner filed his Motion for Summary Judgment on June 2, 2008 and Respondents filed their Joint Cross Motion for Summary Judgment and Memorandum in Support on June 9, 2008. Petitioner filed his Response in Opposition on June 14, 2008 and no reply was filed. Respondents filed their Response to Petitioner's Motion on June 16, 2008 and Petitioner's Rebuttal was filed on June 26, 2008.

## II. LEGAL STANDARD

Rule 56(c) provides for summary judgment if the Court, viewing the record as a whole, determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Haulbrook v. Michelin N. Am., Inc.*, 252 F.3d 696, 700 (4th Cir. 2001) (citing *McKinney v. Bd. of Trustees of Mayland Cmty. Coll.*, 955 F.2d 924, 928 (4th Cir. 1992) ("[S]ummary judgments should be granted in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not necessary to clarify the application of the law.")). In deciding a motion for summary judgment, the Court must view the facts, and inferences to be drawn from the facts, in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986);

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). To defeat summary judgment, the nonmoving party must go beyond the pleadings with affidavits, depositions, interrogatories, or other evidence to show that there is in fact a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322.

### III. DISCUSSION

#### A. Conviction of an Aggravated Felony

The statutory requirements necessary to become a naturalized citizen of the United States are outlined in 8 U.S.C. § 1427. Pursuant to this section, the applicant, "during all the periods referred to in this subsection [must have] been and still [be] a person of good moral character . . . ." 8 U.S.C. § 1427(a)(3) (West 2005). The regulation applicable to the good moral character requirement further establishes that an applicant will be found to lack good moral character if he has been convicted of an aggravated felony, as defined in the Act, on or after November 29, 1990. 8 C.F.R. §316.10(b)(1)(ii).

Respondents' overarching argument is that Petitioner was convicted of an aggravated felony, which shows that Petitioner lacks good moral character and thus is disqualified from American citizenship. Respondents argue that the alien smuggling charge, with which Petitioner was involved, constitutes an aggravated felony and that the PDA that Petitioner entered into constitutes a conviction. Petitioner, relying on the wording of the PDA and the manner in which the 1996 incident was resolved, disputes that he was ever convicted of an aggravated felony.

4

Petitioner further asserts that once the 1996 incident is no longer mischaracterized as a "conviction of an aggravated felony," he will no longer be deemed to lack good moral character.

### I. *Aggravated Felony*

The term "aggravated felony," as applied to immigration, is defined in 8 U.S.C. § 1101(a)(43). In determining whether an offense qualifies as an "aggravated felony," the Court looks to the statute under which the person was convicted and compares it to the relevant definition of an aggravated felony. *See Kawashima v. Mukasey*, 530 F.3d 1111, 1114 (9th Cir. 2008). Included in the statute's definition of "aggravated felony" is "an offense described in paragraph (1)(A) or (2) of section 1324[1] of this title (relating to alien smuggling) . . . ." 8 U.S.C. § 1101(a)(43)(N). Such an offense, however, is not deemed an aggravated felony if "the alien has affirmatively shown that [he] committed the offense for the purpose of assisting, abetting or aiding only the alien's spouse, child, or parent . . . ." *Id.*

Here, Petitioner was arrested and a criminal complaint was filed, charging Petitioner with one count of willfully bringing, or attempting to bring into the United States, three aliens knowing or in reckless disregard of the fact that these aliens had not received prior official authorization to enter the United States, in violation of 8 U.S.C. § 1324(a)(2)(A). (Pet. Review Naturalization Appl. ¶ 7.) Because the statute that Petitioner was charged with violating is expressly included in the definition of an aggravated felony and the exception is not applicable, it is clear that the offense at issue is an aggravated felony under the statute.

---

[1] Any person who, knowing or in reckless disregard of the fact that an alien has not received prior official authorization to come to, enter, or reside in the United States, brings or attempts to bring to the United States in any manner whatsoever, such alien, regardless of any official action which may later be taken with.

5

### ii. Conviction

The Court must next determine whether the state of New York's PDA constitutes a conviction for immigration purposes. Respondents argue that the PDA that Petitioner entered into with government to resolve the 1996 incident constitutes a conviction under the relevant statute. To support their assertion that Petitioner has been "convicted" under the statute, Respondents rely on previously decided case law characterizing deferred adjudication agreements as convictions. Petitioner, however, distinguishes the cases relied upon by Respondents and offers that the deferred prosecution that he agreed to meets neither of the requirements to establish a conviction for immigration purposes.

With respect to an alien, the term "conviction" means a formal judgment of guilt of the alien entered by a court. 8. U.S. C. § 1101(a)(48)(A). However, if adjudication of guilt has been withheld, an alien is deemed to have been convicted where:

> (i) a judge or jury has found the alien guilty or the alien has entered a plea of guilty or nolo contendere or has admitted sufficient facts to warrant a finding of guilt, and
>
> (ii) the judge has ordered some form of punishment, penalty, or restraint on the alien's liberty to be imposed.

*Id.* In order for any proceeding, in which the adjudication of guilt has been withheld, to constitute a conviction for immigration purposes, both conditions (i) and (ii) must be met.

There is no dispute that this case is governed by the provision defining what constitutes a conviction when adjudication has been withheld, which applies to situations where the Petitioner might mitigate the effects of his charges through good behavior, successful completion of probation, or other similar dispositions. Thus, the Court focuses on each prong of the definition:

"sufficient facts to warrant a finding of guilt" and "punishment, penalty, or restraint on the alien's liberty."

To support their argument, Respondents assert that the acceptance of responsibility language in the PDA includes sufficient facts to warrant a finding of guilt and thus satisfies the statute. Petitioner, however, contends that the boilerplate language in the PDA is insufficient to meet the statute's definition of conviction. The language in the PDA, the effect of which the parties disagree, reads: "*[u]pon your accepting responsibility for your behavior* and by your signature on this Agreement, it appearing, after an investigation of the offense, and your background, that the interest of the United States and your own interest and the interest of justice will be served by the following procedure . . . . " (Resp't Mem. Supp. Joint Cross Mot. Summ. J. at Ex. 20) (emphasis added). Other than this language, the PDA includes no other reference to the facts underlying the charges.[2]

The mere boilerplate language that appears to be used in all of New York's Pretrial Diversion Agreements is not case specific and thus cannot be deemed to recite sufficient facts to warrant a finding of guilt. No language in the agreement references the statute allegedly violated or any facts regarding Petitioner's involvement in the attempted alien smuggling. Nor was there any reference to or attachment of a statement of facts or any other evidence that Petitioner admitted guilt in open court or in any other manner.

Although deferred prosecutions of other states have been deemed to fall under the Immigration and Nationality Act's ("INA") definition of conviction, New York's PDA differs substantially with regard to application of the statute. In *Madriz-Alvarado v. Ashcroft*, 383 F.3d

---

[2] In fact, the only document referencing facts surrounding the 1996 incident is the Criminal Complaint. (Resp't Mem. Supp. Joint Cross Mot. Summ. J. at Ex. 17.)

7

321 (5th Cir. 2004), and other cases Respondents cite regarding deferred prosecutions, the applicants were required to plead guilty as part of the deferred adjudication agreement. *See Madriz-Alvarado v. Ashcroft*, 383 F.3d 321 (5th Cir. 2004) (finding deferred adjudication to be conviction where defendant pled guilty, was placed on probation, and fined $500); *Moosa v. I.N.S.*, 171 F.3d 994, 1006 (5th Cir. 1999) (establishing that Texas' deferred adjudication is the equivalent of a conviction for the purposes of immigration law). This Court distinguishes the Texas deferred adjudication program from the New York PDA procedures for the purposes of concluding that Petitioner's 1996 charges did not result in a conviction under § 1101(a)(48)(A). Unlike the program in Texas, Petitioner's guilt has not been established by trial, plea or admission nor have sufficient facts been admitted to support a finding of guilt. Had Petitioner been required to plead guilty or admit to facts surrounding the charges, New York's PDA and Texas' deferred adjudication program would be identical when analyzed under the statute. Instead of utilizing New York's deferred adjudication agreement, which does require the defendant to make a plea, Petitioner was involved in New York's PDA program, which has no such requirements.

In as much as the Court finds that the first element required to establish a conviction under § 1101(a)(48)(A) cannot be met, the Court need not analyze the second prong of punishment. Accordingly, Respondents' joint cross motion for summary is **DENIED**.

### B. Good Moral Character

It has long been a requirement that an applicant for naturalization demonstrates good moral character. *See, e.g., Repouille v. United States*, 165 F.2d 152, 153 (2d Cir. 1948) (construing the phrase "good moral character" in the predecessor to the Immigration and Nationality Act). Petitioner bears the burden to prove, by a preponderance of evidence, that he

has good moral character. 8 C.F.R. § 316.2(b); *see Berenyi v. INS*, 385 U.S. 630, 636-37 (1967); Doubts with respect to Petitioner's good moral character must be resolved against him and in favor of the INS. *See Berenyi*, 385 U.S. at 637. For the Court to grant Petitioner's Motion for Summary Judgment, it must conclude that the record as a whole establishes that he is a person of good moral character. *See, e.g., Puciaty v. Dep't Justice*, 125 F. Supp. 2d 1035, 1039-40 (D. Haw. 2000) (granting plaintiff's summary judgment motion).

Pursuant to 8 U.S.C. § 1427, an applicant must be of good moral character for at least five years prior to the filing of his application and for the entire time that the application is pending. However, the INA does not define good moral character except by setting forth a non-exhaustive list of instances in which a person will not be regarded as one of good moral character. 8 U.S.C. § 1101(f); 8 C.F.R. § 316.10. Not surprisingly, good moral character is highly subjective and difficult to define. Consequently, courts analyze good moral character on a case by case basis, and then must take into account the "standard of the average citizen in the community of residence." 8 C.F.R. § 316.10(a)(2). Logically the first step is to determine whether Plaintiff's "good moral character" passes muster under sections 1101(f) or 316(b), as those sections identify specific, objective factors that indicate a lack of good moral character. Then the Court can filter Plaintiff's character through the subjective test under section 316(a)(2).

Pursuant to § 1101(f), an applicant will be regarded as lacking good moral character if he: is a habitual drunkard or gambler; is illegally connected with prostitution, alien smuggling, polygamy, genocide, or severe violations of religious freedom; has served 180 days or more in jail; has given false testimony for the purpose of obtaining any benefit under the INA; or was convicted of an aggravated felony. Here, Respondents rely solely on their allegation that Petitioner was convicted of an aggravated felony and have provided no additional evidence to

9

support their assertion that Petitioner lacks good moral character. As discussed above, Petitioner was not convicted of an aggravated felony, despite the 1996 incident and the resulting PDA; therefore, Petitioner is still capable of meeting the good moral character requirement.

Other factors also point the Court toward the conclusion that Petitioner does not lack good moral character. Petitioner has been a productive, self-sufficient resident of the United States since his arrival here. His application establishes successful employment endeavors, continued support for his family, positive community contributions, and timely payment of taxes. Additionally, there is nothing in the record to support a finding that Plaintiff's conduct during the statutory period and beyond falls below the standards of an average citizen in his community, as his application includes affidavits in support from employees, customers, neighbors, and tenants. While the Court does not condone the conduct that led to the reckless driving and assault charges, these charges did not result in a conviction and, based on the limited information, this Court cannot find that these incidents, in and of themselves, are sufficient to find that Petitioner lacks good moral character for naturalization.

Though Petitioner has requested a hearing, and though the statute entitles him to a hearing upon request, the Court finds that a hearing is unnecessary. Based upon a thorough review of the record as a whole and arguments in the parties' motions, the Court finds that Petitioner does not lack good moral character and the denial of his application for naturalization was error as a matter of law. Respondents providing no additional evidence on which it can base a determination that Petitioner lacks good moral character, this Court is of the opinion that Petitioner's Motion should be, and hereby is, GRANTED.

## IV. CONCLUSION

For the foregoing reasons, Respondents' Joint Cross Motion for Summary Judgment is **DENIED** and Petitioner's Motion for Summary Judgment is **GRANTED**.

The Court **DIRECTS** the Clerk to send a copy of this Amended Memorandum Opinion and Order to counsel and parties of record.

**IT IS SO ORDERED.**

/s/
Raymond A. Jackson
United States District Judge

Norfolk, Virginia
January 16, 2009